NOT DESIGNATED FOR
PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1152

STATE OF LOUISIANA

VERSUS

J. L.

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 09-1019
HONORABLE LEO BOOTHE, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Shannon J. Gremillion, Judges.

AFFIRMED.

John Frederick Johnson
District Attorney, Seventh Judicial District Court
David Robert Opperman
Assistant District Attorney
501 Caddo Parish Courthouse
4001 Carter St., Suite 9
Vidalia, La 71373
(318) 336-5526
Counsel for Appellee:
State of Louisiana

**Mark Owen Foster**
**Louisiana Appellate Project**
**P. O. Box 2057**
**Natchitoches, LA 71457**
**(318) 572-5693**
**Counsel for Defendant-Appellant:**
**J. L.**

**J. L.**
**Louisiana State Penitentiary**
**Camp D - Raven 3L4**
**Angola, LA 70712**

**PICKETT, Judge.**

<u>FACTS</u>

On April 29, 2009, victim H.L., the defendant's daughter, was at Parkway Baptist Church in Natchez, Mississippi, attending a youth class.[1] H.L.'s sister, brother, and the defendant, all residents of nearby Concordia Parish, Louisiana, were also on church grounds. At some point, church officials became aware that the victim had run away. Church personnel then went looking for her, and they found her walking in a nearby neighborhood. She was upset and insisted that she would not go back.

Church workers convinced the victim to return to church. Once there, the girl stated that her father was having sex with her. Church personnel contacted police. At trial, the victim testified the defendant began engaging in anal sex with her when she was approximately nine years old and had either anal or vaginal sex with her more than one hundred times over the years, until April 2009, when she reported him.

On August 24, 2009, a Concordia Parish grand jury indicted the defendant, J.L., for one count of aggravated rape, a violation of La.R.S. 14:42, and one count of aggravated incest, a violation of La.R.S. 14:78.1. The rape charge proceeded under docket number 09-1019, while the incest charge proceeded under docket number 09-2120.

On April 9, 2010, the defendant waived his right to a jury trial. The court conducted a bench trial on April 12 and 13, and found the defendant guilty as charged. The proceeding included both docket numbers. On April 28, the court

---

[1]To protect the identity of the victim, we will use initials when needed, in accordance with La.R.S. 46:1844(W).

1

sentenced him to life imprisonment, without benefit of parole, probation, or suspension of sentence for aggravated rape and twenty years for aggravated incest.

The defendant now appeals, assigning one error through counsel. His motion to appeal included both docket numbers, but the record does not show that the cases were ever consolidated. Therefore, the two convictions have separate docket numbers on appeal and will result in two separate opinions. The defendant has also filed a pro se brief asserting two assignments of error.

## ERROR PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we find no errors patent.

## ASSIGNMENT OF ERROR

In his sole assignment of error, filed in counsel's brief, the defendant argues the trial court erred by refusing to address his pro se pretrial motions. He quotes from the following colloquy, which occurred at a pretrial hearing on October 14, 2009:

> MR. OPPERMAN [Prosecutor]:
>
> Your Honor, Mr. [L.] had filed his own motions and your Honor has set them for hearing. One is a motion for a bond reduction and a motion for discovery. They're pro se, he's filed them since he's had counsel. I defer to the Court and to Mr. Lemke.
>
> MR. LEMKE [Defense Counsel]:
>
> I don't know anything about the motions that - - Mr. [L.] just informed me he didn't know I had filed discovery motions so I think the discovery motion is probably taken care of. On the bond reduction, I'm going to review the discovery and then I'll submit my own bond reduction.
>
> THE COURT:

2

Mr. [L.], ordinarily this applies when the public defender represents an individual but when it starts occurring in that context, I'll tell them if you continue to file pro se motions, I'm going to consider that as a request and dismiss the public defender from your case. Of course, this is not a public defender case right?

MR. LEMKE:

This is, your Honor.

THE COURT:

It is? Mr. [L.], we can't have two different tracks running on these motion schedules and that sort of thing. If you file anymore [sic] pro se motions, I'm going take that as a motion on your behalf to dismiss the public defender as your attorney and you'll proceed pro se.

As the defendant observes, trial courts are required to address pro se motions when doing so will not lead to confusion. *State v. Melon*, 95-2209 (La. 9/22/95), 660 So.2d 466. However, as the state points out, the defendant acknowledges that such an error will not warrant reversal unless a defendant's case was prejudiced by it. *State v. Pitree*, 05-1513 (La.App. 3 Cir. 5/3/06), 930 So.2d 265, *writ denied*, 06-1897 (La. 3/23/07), 951 So.2d 1092. The state also cites a similar holding in *State v. Jones*, 41,299 (La.App. 2 Cir. 11/9/06), 942 So.2d 1215, *writ granted in part on other grounds*, 06-3025, 06-2905 (La. 8/31/07), 963 So.2d 381, 382.

The state disputes whether the court's action was truly a "refusal" to rule, noting that the court set the motions for hearing. In fact, the court expressed a willingness to proceed with the pro se motions that were pending at that time. The defendant withdrew those motions. However, the court threatened to divest the defendant of counsel if he continued to file pro se motions. Therefore, the court's reaction to the motions was improper under *Melon*. We note that neither the defendant nor his attorney entered an objection to the court's ruling. However, the defendant has failed to show how the court's treatment of his pro se motions prejudiced his case. He argues that his pro se motion for discovery sought formal

3

discovery, but that his counsel accepted open file discovery and was thus caught in a trap. According to the defendant, "counsel did not get everything he thought he was getting in the 'casual' open file discovery." He argues that since discovery was not formal, he was left without a remedy.

The defendant argues the alleged discovery problem led him to waive his right to a jury trial on April 9, 2010. As the defendant observes, counsel claimed in the motion that he had learned on April 5 that the state intended to use videotaped statements at trial that it had previously stated it would not use. He argues the discovery-related prejudice recurred during trial, as he "was repeatedly faced with" evidence that had not been provided in open file discovery. During the testimony of Rosalyn Johnson, the State introduced notations of another nurse, over counsel's objection, which was apparently hearsay-based. At the close of Johnson's testimony, counsel proffered an objection, alleging that he had not been provided with the statement in discovery.

During the direct examination of forensic interviewer Shantelle Cooper, the state sought to introduce a videotaped statement by A.L., H.L.'s sister. Defense counsel immediately objected, stating that he did not have prior knowledge of the statement, despite open file discovery. The state argued that the defendant was not genuinely surprised, due to another reference in the discovery materials to A.L.'s statement. Ultimately, the court allowed the statement to be admitted.

On appeal, the defendant claims that any potential remedies were hobbled by the fact that discovery in the present case was not formal. However, he does not cite any ruling by the trial court that precluded relief due to the use of open file discovery.

4

Counsel's decision to accept open file discovery did not necessarily preclude remedies for discovery violations. *See, e.g., State v. Taylor*, 597 So.2d 123 (La.App. 5 Cir. 1992), *and State v. Garrick*, 03-137 (La. 4/14/04) 870 So.2d 990. ("We have no quarrel with the court of appeal's premise that 'when litigants [choose] to modify the discovery process and enter into an open file discovery agreement, it must be fully complied with in good faith.' *Garrick* at 993 (*State v. Garrick*, 02-712, p. 14 (La.App. 3 Cir. 12/11/02), 832 So.2d 1110, 1118.)")(alteration in original).

Also, during the hearing on the defendant's jury waiver, he made no mention of being surprised by the state's decision to use the videotape. However, it is more significant that the defendant does not now challenge any of the trial court's individual rulings on his discovery-based objections at trial. Further, he does not cite any instance in which the court overruled one of his objections because he had relied on open file discovery. The defendant makes a very specific argument on appeal. He complains the trial court should have considered his pro se motions, but he recognizes that he must demonstrate prejudice to obtain relief. The prejudice he alleges is that counsel accepted open file discovery, leaving him with no relief.

Since the defendant has not demonstrated that he was bereft of remedies, the core argument of his assignment fails. He has failed to show that his case was prejudiced by the fact that his pro se motions were not reviewed by the trial court.

For the reasons discussed, this assignment of error lacks merit.

## PRO SE ASSIGNMENT OF ERROR NUMBER ONE

In his first assignment of error, the defendant argues his ability to file a pro se brief has been hindered.     Before addressing the specifics of this claim, we observe that although the brief has been accepted it is certainly untimely.

According to this court's records, the defendant was notified on May 24, 2011, that the record was being sent to him and that his briefing deadline was June 20. After the state of emergency (due to flooding) was lifted and the defendant returned to Angola, this court informed him that the record was again being sent to him and the new briefing deadline was July 15. On August 17, this court received a letter from the defendant expressing some confusion regarding appellate procedure and requesting an extension of the briefing date. An extension to August 30 was granted. As noted earlier, his brief was postmarked two days past that date.

Regarding substance, the specifics of his claim are unclear. In the first paragraph of his argument, he implies he was not allowed to retain a copy of his records. His second paragraph implies the Legal Programs Department should have taken a more active role in his case. In a later portion of his argument, the defendant acknowledges he was "loaned" a copy of the transcript by the Legal Programs Department but states he did not receive "'reasonable access' to anything else." He again acknowledges that this court provided him with the record but claims the Legal Programs Department at Angola did not provide him with reasonable access to said record.

To the extent the defendant appears to complain that he did not have the assistance of an inmate counsel substitute, the argument lacks merit. *State v. Hicks*, 08-511 (La.App. 1 Cir. 6/26/08), 992 So.2d 565. As already mentioned, the

6

defendant's overall argument is unclear. He seems to claim that he was not allowed full access to the record, but he acknowledges the Legal Programs Department at Angola loaned him a transcript, although he doesn't specify which transcript he received. Thus, it is not clear how his access to his record was restricted, nor is it clear how his efforts to compose a brief were hindered.

The defendant complains the closing arguments and rebuttal were not transcribed. However, the arguments do not constitute trial evidence, and the defendant is unable to even suggest any portion of said arguments that might contain reversible error. He notes that counsel did not designate that portion of the record for transcription.

Like the defendant in *Hicks*, the defendant had the benefit of an appellate counsel who filed a brief on his behalf, and if his conviction is affirmed, the post-conviction relief process will be available for him to raise constitutional issues, if any are pertinent.

For the reasons discussed, this assignment lacks merit.

### PRO SE ASSIGNMENT OF ERROR NUMBER TWO

In his second assignment of error, the defendant argues his trial counsel was ineffective for failing to impeach state witnesses and for failing to investigate the allegations at issue. The defendant claims that he informed counsel that the victim had multiple boyfriends and "male associates" at the time of the offense. He also suggests the victim's mother may have used the rape allegation as a tool "to rid [him] from the children's lives." He implies the state's case relied heavily on the victim's testimony and thus there was a need to prepare to impeach her.

Such a claim raises possible issues of trial strategy and matters that do not appear in a trial record. Any ineffective assistance of counsel claim should

7

relegated to the post-conviction process, in which both parties can develop the record further. *See, e.g., State v. Smith*, 07-468 (La.App. 3 Cir. 10/31/07), 969 So.2d 694, *writ denied*, 07-2484 (La. 5/16/08), 980 So.2d 707.

## CONCLUSION

The defendant has failed to show reversible error in the trial court's handling of his pro se motions at trial.

The defendant has failed to demonstrate that his right to file a pro se brief has been hindered. His ineffective assistance of counsel claim is relegated to the post-conviction relief process. The conviction is affirmed.

**AFFIRMED.**