MARC E. JOHNSON, Judge.
| ¡¡Defendant appeals his convictions for aggravated rape and sexual battery on the basis of insufficient evidence, erroneous admission of other crimes evidence, and the erroneous qualification of a witness as an expert in delayed disclosure. For the reasons that follow, we affirm his convictions.
Defendant, Rogelio Gonzalez, was indicted by a grand jury on September 8, 2011, and charged with one count of aggravated rape on a juvenile under the age of 13 in violation of La. R.S. 14:42 and one count of sexual battery on the same juvenile in violation of La. R.S. 14:43.1. He pled not guilty and, after waiving his right to a jury trial, proceeded to a bench trial on October 15, 2013. After a two-day trial, the trial judge found Defendant guilty as charged on both counts and sentenced him to life imprisonment on count one (aggravated rape) and 25 years on count two (sexual battery), both without the benefit of parole, probation or |4suspension of sentence and to run concurrently with each other. Defendant was subsequently granted this out-of-time appeal.

FACTS

In April 2011, the Mansfield Police Department in Texas received a report of a sexual assault that occurred several years earlier in Kenner, Louisiana. After interviewing the victim, E.R.,[1] who was then living in Texas and was 15 years old at the time of the interview, the Mansfield Police Department contacted the Kenner Police Department, which proceeded to further investigate the matter.
During the investigation, Detective La-shonda Woodfork with the Kenner Police Department interviewed the victim, who recounted what happened to her, her mother, her grandmother, and her uncle. Detective Woodfork also reviewed the victim’s recorded Texas forensic interview and learned that the incident occurred at E.R.’s grandmother’s house in Kenner sometime between October 2005 and April 2006, while E.R. was attending A.C. Alexander Elementary School. During E.R.’s Texas interview, she stated that she was lying on the bed in her grandmother’s room when her grandmother’s brother, who E.R. knew only as “Uncle,” came into the room and took off her pants and underwear. According to E.R., “Uncle” then took off his pants and underwear and tried *1231 to put his penis in her vagina, but it did not “fit,” at which time he put his fingers on the inside of her vagina. Subsequently, during Detective Woodfork’s investigation, E.R. identified Defendant as “Uncle” in a family photograph. Defendant was later arrested.
At trial, E.R. corroborated the information she gave during her Texas interview. She testified that while she was attending A.C. Alexander Elementary School she was sexually abused by Defendant at her grandmother’s house. She recounted that after her grandmother had left the house, Defendant came into the | ¿room where she was lying on the bed watching television and removed both his and her pants and underwear and touched her vagina with his penis. She explained that she felt a sharp pain in the lower part or bottom of her vagina and that it hurt. E.R. further testified that Defendant touched around her vagina with his fingers. E.R. stated that Defendant stopped when he heard her Uncle Jonathan come into the house. She stated that upon hearing the front door, Defendant pulled up his pants and walked out of the room. E.R. went to the bathroom and then followed Jonathan around the rest of the day. E.R. testified that Jonathan did not see what Defendant did to her and that she did not tell him what had happened.
Jonathan Gonzalez testified that he lived with his grandmother in Kenner in 2005 and 2006 while he attended John Quincy Adams Middle School. He stated that E.R. would be at the house when he came home from school and .that Defendant would watch E.R. when no one was home. He recalled a day when he came home from school and found Defendant present at the house and E.R. visibly upset and sad; however, E.R. never told him why she was upset.
E.R. testified that she never told anyone about the incident until she told her best friend in 2011, when she was living in Texas. She later told her brother and mother, at which time the police were called and she recounted the incident to the police. E.R. explained that she developed nightmares after the incident in which she was being sexually assaulted by someone but she could not see his face.
Defendant also testified at trial. He testified that he did sheetrock and taping work and was very busy after Hurricane Katrina, which hit the area in August 2005. He admitted that he visited his sister’s home but noted that it was not often and stated that he was never at the home alone with E.R. He claimed that all of E.R.’s statements were lies.

\ «ISSUES

Defendant raises several issues on appeal. Appellate counsel’s sole assignment of error on appeal and Defendant’s first pro se assignment of error is that the evidence is insufficient to uphold Defendant’s convictions. Defendant argues that the only evidence against him is the uncorroborated and conflicting testimony of the victim.
Defendant also raises three additional pro se assignments of error. He first maintains the trial court improperly admitted other crimes evidence. Specifically, he argues the trial court erroneously admitted evidence of his alleged lustful disposition based on hearsay and uncharged, unproven allegations.
Second, Defendant asserts the trial court erred in qualifying State witness Carrie Paschall as an expert in delayed disclosure. He contends that the field of delayed disclosure has been denounced by the Louisiana Supreme Court, the field does not meet the expert testimony crite *1232 ria under Daubert>[2] and that Ms. Paschall was not qualified to make a psychological assessment.
Finally, Defendant alleges he was denied his constitutional rights by the erroneous use of La. R.S. 46:1844(W). Defendant claims he was deprived of his rights when this Court ordered’that he could not make a copy of the record and that he was only allowed review of the record in the presence of a prison official. He contends these restrictions prevented him from utilizing the record in any meaningful way because he is illiterate and does not speak the English language.
LAW & ANALYSIS

Sufficiency of the Evidence

Defendant argues the State failed to prove his guilt beyond a reasonable doubt because E.R. waited five years to report the incident, had psychological tissues, and was not credible. He contends there was no evidence to corroborate E.R.’s testimony.
In reviewing the sufficiency of the evidence, an appellate court must determine whether the evidence, direct or circumstantial or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). A review of the record for sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt, but rather the reviewing court is required to consider the whole record and determine whether any rational trier of fact could have found guilt beyond a reasonable doubt. State v. Videau, 13-520 (La.App. 5 Cir. 12/27/13); 131 So.3d 1070, 1082, writ denied, 14-212 (La.9/12/14); 160 So.3d 965.
The testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even when the State does not introduce medical, scientific, or physical evidence to prove the commission of the offense. Videau, 131 So.3d at 1082. It is presumed that the trier of fact considered discrepancies in testimony in assessing credibility and weight of testimony. It is not the appellate court’s function to reevaluate the credibility choices made by the finder of fact. Id.
Defendant was convicted of both aggravated rape and sexual battery. Aggravated rape is the act of anal, oral or vaginal sexual intercourse with a person that is deemed to be without his or her consent because, in this case, that person is under the age of 13. La. R.S. 14:42(A)(4). “Any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime.” La. R.S. 14:41(B). Sexual battery is the touching of the genitals of the [ ¿victim by the offender using any instrumentality or any part of the body of the offender without the victim’s consent or when the victim is not the spouse of the offender, is under the age of 15, and is at least three years younger than the offender. La. R.S. 14:43.1(A)(1).
The record shows that E.R.’s date of birth is November 24, 1995. E.R. testified that the incident occurred when she was a student at A.C. Alexander Elementary School. The State submitted E.R.’s records from A.C. Alexander, which showed *1233 that she attended the school from October 27, 2005 through April 26, 2006, while she was nine and ten years old. Defendant testified that he was born in 1954, making him at least 50 years old at the time of the incident.
E.R. testified that Defendant touched her vagina with his penis. She explained that she felt a cold, hard, and skin-like object “in [her] lower body.” E.R. testified that it hurt in her “lower vagina” when Defendant’s penis touched her; specifically, she stated that she felt a sharp pain at the bottom of her vagina. She further stated during her videotaped forensic interview that Defendant’s penis did not fit in her vagina when he tried to put it in. We find that, based on this testimony, a rational trier of fact could have found beyond a reasonable doubt that vaginal penetration, however slight, occurred and a rape was committed.
E.R. also testified that Defendant “fingered her,” or touched her vagina with his fingers, causing her vagina to hurt. This testimony likewise sufficiently establishes that a sexual battery occurred.
Defendant argues that E.R.’s testimony should not have been believed because it was uncorroborated by physical or medical evidence and it conflicted with other testimonial evidence. It is well-established that the testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove [3the commission of the offense. State v. Hotoph, 99-243 (La.App. 5 Cir. 11/10/99); 750 So.2d 1036, 1045, writs denied, 99-3477 (La.6/30/00); 765 So.2d 1062, and 00-150 (La.6/30/00); 765 So.2d 1066. In this case, as discussed above, E.R.’s testimony was enough to establish the essential elements of aggravated rape and sexual battery.
Additionally, the credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Ledet, 00-1103 (La.App. 5 Cir. 7/30/01); 792 So.2d 160, 171, writ denied, 01-2451 (La.9/30/02); 825 So.2d 1185. Defendant contends E.R. cannot be believed because she waited five years before reporting the incident, her testimony about when the incident occurred was inconsistent, and she described Jonathan, who allegedly came home during the incident, as wearing an orange uniform when he testified that his school uniform was khaki pants and a gray shirt. The record shows that Ms. Pase-hall, who was qualified without objection as an expert in the field of child forensic interviews and disclosure interview patterns, testified that delayed disclosure is not uncommon by child victims of sexual assaults. Additionally, although E.R. was confused as to whether the incident occurred before or after Hurricane Katrina, she consistently testified that it occurred while she attended A.C. Alexander Elementary School, which was proven to be shortly after Hurricane Katrina. Further, Jonathan Gonzalez testified that he attended John Quincy Adams Middle School during the 2005-2006 school year. He described that his school uniform consisted of khaki pants with a gray shirt that had an orange emblem. Thus, E.R.’s testimony about an orange uniform is not contradictory. The trial judge specifically stated that he found E.R. credible and we find the record supports his determination. We do not find E.R.’s testimony regarding the above matters' to be inconsistent or incredible.
h(Defendant also asserts E.R.’s nightmares of being raped were impermis-sibly used as substantive evidence of his guilt. To the contrary, testimony regard *1234 ing E.R.’s nightmares was used in an attempt to explain what led E.R. to finally disclose the incident and to show the effect the incident had on her.
Finally, Defendant argues that E.R.’s mother had a grudge against him and that E.R. was coached as to her testimony thereby rendering her testimony unbelievable. The record is devoid of any evidence to support Defendant’s allegation.
The trial judge heard all of the evidence and made a credibility determination. Considering the record before us, we find there is sufficient evidence to uphold Defendant’s convictions for aggravated rape and sexual battery.

Other Crimes Evidence

In his second pro se assignment of error, Defendant argues that the trial judge erroneously admitted other crimes evidence of Defendant’s alleged lustful disposition based on hearsay and uncharged, unproven allegations. The record reflects that on the morning of trial the State filed a notice of intent to use other crimes evidence that Defendant engaged in sexually assaultive behavior upon another alleged victim, A.C., and a second known person. The State explained that it did not intend to use the other crimes evidence, but only filed its notice of intent in anticipation of evidence that the defense may seek to elicit from a witness and that the other crimes evidence may be brought up during questioning or cross-examination of that witness. The trial court responded, “All right, thank you,” and defense counsel did not make an objection.
During defense counsel’s cross-examination of Detective Woodfork, the State’s first witness, she indicated that she had spoken to the victim’s grandmother, M.G., during her investigation. Defense counsel asked if M.G. provided any ^information that led Detective Woodfork to believe that Defendant had committed the crimes, and Detective Woodfork responded that M.G. “spoke of some incidents that [Defendant] had done in the past.” M.G., who was in the courtroom, made an outburst in the court stating, “I never said that.” Defense counsel did not make an objection to Detective Woodfork’s testimony, but rather continued his cross-examination and continued asking her about her interview with M.G.
Defense counsel then questioned Detective Woodfork about her interview of E.R.’s mother during the investigation. He specifically asked Detective Woodfork whether E.R.’s mother had stated that similar acts had happened to E.R.’s mother and E.R.’s aunt in Mexico and that Defendant’s assault of E.R.’s aunt was connected to the murder of E.R.’s Aunt. Detective Woodfork replied that E.R.’s mother so stated.
Additionally, during E.R.’s videotaped forensic interview, E.R. stated that after disclosing the incident to her brother, she learned Defendant was a known rapist. Defense counsel expressly stated that he had no objection to the videotape being played and admitted into evidence.
Further, defense counsel called M.G. and Defendant’s wife as witnesses at trial and specifically questioned them about whether they had any knowledge of Defendant sexually assaulting E.R.’s mother or aunt in Mexico. Both testified that they had no such knowledge. M.G. further denied ever telling the police any such thing.
The record shows that the defense elicited other crimes evidence during the cross-examination of Detective Woodfork. When Detective Woodfork responded to defense counsel’s questions by referring to past incidents, the defense did not object but rather continued to ask Detective Woodfork about other crimes evidence.
*1235 hsWe find that Defendant is procedurally barred from raising the issue of the admission of other crimes evidence on appeal. In order to preserve the right to seek appellate review of an alleged trial court error, the party claiming the error must state an objection contemporaneously with the occurrence of the alleged error, as well as the grounds for that objection. La. C.Cr.P. art. 841(A); State v. Berroa-Reyes, 12-581 (La.App. 5 Cir. 1/30/13); 109 So.3d 487, 498.
Defendant never lodged an objection to the State’s notice of intent to use the other crimes evidence. Additionally, it was the defense that first initiated questioning regarding the other crimes evidence when defense counsel specifically asked Detective Woodfork if she had been told about Defendant’s prior similar sexual assault on E.R.’s mother and aunt. Thus, Defendant not only failed to object to other crimes evidence, but actually consented to it as demonstrated by defense counsel’s initiating questions regarding the allegations of prior sexual assault against Defendant and counsel’s consistent questioning of the witnesses regarding the matter. See State v. Bienvenu, 14-541, 2014 WL 7184449, *5-6, 167 So.3d 63, 66-67 (La.App. 5 Cir. 12/16/14).

Expert Testimony

In Defendant’s next pro se assignment of error, he argues the trial court erred in qualifying Carrie Paschall as an expert witness. He maintains Ms. Paschall works for and is paid by the district attorney’s office in Texas. He also contends she is not a child counselor and is not certified in psychology or psychiatry. Defendant further asserts she was qualified as an expert in a field the Louisiana Supreme Court has denounced. He argues that Ms. Paschall’s testimony regarding delayed disclosure was used to allow testimony of prohibited Child Sexual Abuse Accommodation Syndrome, which is not recognized by the American Medical Association.
ImWe find Defendant has failed to preserve this issue for appeal. At trial, as the State was questioning Ms. Paschall regarding her qualifications, defense counsel interrupted as follows: “I’m sorry, Your Honor. If we could speed this up, Your Honor, we have no objection to her being designated an expert witness in the field of child forensic interviewing.” The Stated asked whether the defense would also stipulate to Ms. Paschall’s qualifications in “disclosure interview patterns.” Defense counsel replied, “[w]e have no objection.” Defense counsel then attempted to expand Ms. Paschall’s expertise to the area of child counseling, a decision on which the trial court deferred until after the State’s direct examination.
Thereafter, the State offered Ms. Pasc-hall as an expert in the field of child forensic interviews and disclosure interview patterns. The trial court ruled that “[wjithout an objection, she’ll be accepted as such.” Defense counsel responded, “Thank you, Your Honor” and did not make an objection. Defense counsel also did not object to any of Ms. Paschall’s testimony regarding delayed disclosure.
As noted above, to preserve the right to appellate review of an alleged trial court error, a party must state a contemporaneous objection with the occurrence of the alleged error as well as the grounds for the objection. State v. Torregano, 03-1335 (La.App. 5 Cir. 05/11/04); 875 So.2d 842, 846. The purpose behind the contemporaneous objection rule is to put the trial court on notice of an alleged irregularity so that it may cure the problem. It is also intended to prevent a defendant from gambling for a favorable verdict and then resorting to appeal on errors that might *1236 have easily been corrected by an objection. Id.
In the present case, defendant never objected to the testimony of Ms. Paschall. Further, he never challenged the qualifications of Ms. Paschall or the reliability or admissibility of testimony relating to the theory of delayed disclosure. The failure to raise an objection to the admissibility and reliability of an expert’s 1 utestimony constitutes a waiver of such an objection and precludes consideration of the issue on appeal. State v. Tillery, 14-429, 2014 WL 7184425, *6-7, 167 So.3d 15, 19-20 (La.App. 5 Cir. 12/16/14).
Similar to the present case, the defendant in Torregano argued that the trial judge erred in accepting the State’s expert witness in the field of delayed disclosure. This Court found that the issue was not properly before us on appeal because the defendant never challenged the reliability or admissibility of the witness’ testimony relating to the theory of delayed disclosure. Torregano, 875 So.2d at 845-46. Additionally, in Tillery, the defendant in a supplemental pro se brief challenged the qualifications of the State’s expert witness in the field of sexual abuse. This Court found that the defendant waived any objection to the expert witness’ testimony because defense counsel had stipulated to the expert witness’ expertise in the field of child sexual abuse, and there were no objections lodged throughout the witness’ testimony. Tillery, 2014 WL 7184425, *8, 167 So.3d 15, 21. Likewise, in the present case, we find Defendant waived any objection to Ms. Paschall’s testimony.

Restriction on Use of Record under and Constitutionality of La. R.S. f6:18H(W)

In his last pro se assignment of error, Defendant contends that this Court unconstitutionally denied him due process, access to the courts, right to appeal, and right to a complete record on appeal. He argues that this Court utilized La. R.S. 46:1844(W) hi a manner that violates the State and Federal Constitutions when it ordered that Defendant shall not make a copy of the record and that Defendant shall only be allowed to review the record in the scheduled presence of a prison official.
Defendant asserts that the statute was not designed to prevent a defendant from obtaining a copy of the transcripts of his own trial. He contends that this 11sCourt used the statute to deprive him, an illiterate person who does not speak the English language, from utilizing the record of his trial in any meaningful way. Defendant explains that he was locked in a room with the transcript and. strictly forbidden from doing anything except reading it and taking notes on his own personal legal pad. He asserts that with this limited review he had no access to law library aid, no help from his inmate counselor, and was disallowed copies of any portion of the record. Defendant contends that there could be no meaningful appeal with a record under these circumstances and, therefore, he was denied access to the courts, right to effective assistance of counsel, right to judicial review based on a complete record, due process of law, and the right to a public trial.
Defendant also asserts that the record is not protected by La. R.S. 46:1844(W), but rather only the victim’s identity is protected by the statute. He maintains that the redaction of the victim’s name from the record can be accomplished without the restrictions imposed by this Court.
Defendant further argues that La. R.S. 46:1844(W) is unconstitutional. He argues that the statute impermissibly burdens defendants and lacks sufficient guidelines to prevent arbitrary and discriminatory enforcement. The Louisiana State Attorney *1237 General’s Office (A.G.) was notified of the constitutional challenge and responded that the statute is constitutional, both facially and as it has been applied to Defendant. The A.G. argues Defendant has failed to carry his burden of proof and overcome the strong presumption of constitutionality of the statute.
Thus, Defendant argues both that La. R.S. 46:1844(W) is unconstitutional and that this Court’s use of the statute to issue a protective order and impose restrictions on the review of the appellate record violates his constitutional rights.
Statutes are presumed to be constitutional and the party challenging the validity of the statute bears the burden of proving it is unconstitutional. State v. Hatton, 07-2377 (La.7/1/08); 985 So.2d 709, 719. As a result of this presumption, a party wishing to challenge the constitutionality of a statute must do so properly. Id.
There is no single procedure for attacking the constitutionality of a statute; however, the Louisiana Supreme Court has set forth the challenger’s burden as a three-step analysis: (1) a party must raise the unconstitutionality of a statute in the trial court; (2) the unconstitutionality of a statute must be specifically pleaded; and (3) the grounds outlining the basis of unconstitutionality must be particularized. Hatton, 985 So.2d at 719. The supreme court has explained that the purpose of these procedural rules is to allow interested parties sufficient time to brief and prepare arguments defending the constitutionality of the challenged statute. “The opportunity to fully brief and argue the constitutional issues provides the trial court with thoughtful and complete arguments relating to the issue of constitutionality and furnishes the reviewing courts with an adequate record upon which to consider the constitutionality of the statute.” Id.
Here, Defendant failed to raise the constitutionality of La. R.S. 46:1844(W) in the trial court, and the constitutionality of a statute cannot be raised for the first time on appeal. See State v. Mickel, 07-47 (La.App. 5 Cir. 5/29/07); 961 So.2d 516, 526, writ denied, 07-1422 (La.1/7/08); 973 So.2d 732. Therefore, we find the issue is not properly before us.
Regarding Defendant’s claim that this Court’s application of La. R.S. 46:1844(W) in issuing a protective order and imposing restrictions on the viewing of the appellate record violated his constitutional rights, we find no merit in such claim.
On March 2, 2015, Defendant requested a complete copy of the appellate record so he could file a pro se supplemental brief. Defendant asked that the Clerk |17of Court provide him with the record or in the alternative forward the record to Trish Foster with the Louisiana State Penitentiary’s legal department to be copied and have a copy provided to Defendant. On the same date, this Court granted Defendant access to the appellate record and ordered the Clerk of Court to forward the appellate record to Trish Foster. This Court further ordered that the legal department or Defendant “shall not make a copy of this record, nor reproduce the evidence and exhibits in this case, and the defendant/appellant shall only be allowed to review the record in the scheduled presence of a prison official.” [Emphasis in original.]
On March 12, 2015, this Court amended its previous order “[b]ased upon the information that defendant is unable to read or write the English language and is therefore unable to fully review the appellate record in this matter” and ordered that “Jamie Maduro, DOC # 459556, be allowed *1238 to assist the above defendant as a Spanish Interpreter for the purpose of review of the record and preparation of the pro se supplemental brief.”
Despite Defendant’s assertion, we find Defendant was provided meaningful access to the courts and that his right to appeal and right to legal assistance were not impinged upon by the above restriction. Defendant himself was allowed to use the record to prepare his own pro se brief, in which he raised four assignments of error. Additionally, Defendant was allowed the assistance of a Spanish interpreter to aid him in reviewing the record and preparing his brief. Further, Defendant was represented by counsel, who prepared an appellate brief. Defendant has failed to demonstrate that his efforts to pursue his appeal or any legal claim were hindered by the refusal to provide him with his own personal copy of the record without the restrictions of a protective order. An inmate complaining that his access to the courts has been abridged must demonstrate that the alleged shortcomings hindered |iahis efforts to pursue a legal claim. See State v. Hicks, 08-511 (La.App. 1 Cir. 6/26/08); 992 So.2d 565, 567 (per curiam,), writ denied, 08-1986 (La.5/15/09); 8 So.3d 578.
In Hicks, supra, the defendant filed a motion to require the Louisiana State Penitentiary to copy the appellate record in order that an inmate counsel substitute could assist him in filing a pro se brief. The defendant claimed that the refusal to furnish him with a copy of the record and the assistance of an inmate counsel violated his constitutional right of judicial review based upon a complete record. The First Circuit found that the defendant’s motion was at odds with La. R.S. 46:1844(W) and denied his request to copy the transcript. The court found the defendant did not demonstrate that the refusal to provide him with a copy of the record or to allow an inmate counsel substitute to review a confidential record hindered his efforts to pursue an actual legal claim. The court noted that the defendant himself was allowed to use the record to prepare his own pro se brief and that he was represented by counsel who filed an appellate brief; thus, the court concluded the defendant had meaningful access to the courts and his right to appeal was adequately protected.
Likewise, in the present case, we find Defendant has failed to show that his constitutional rights have been violated by this Court’s protective order, which was issued in order to comply with La. R.S. 46:1844(W).

ERRORS PATENT

Our review of the record for errors patent in accordance with La. C.Cr.P. art. 920 reveals several errors that require corrective action.
First, the record does not reflect that Defendant was notified of Louisiana’s sex offender registration requirements in accordance with La. R.S. 15:540, et seq. La. R.S. 15:543(A) requires the trial judge to provide written notification to a 1^defendant of the sex offender registration and notification requirements. The failure to provide this notification, even where a life sentence has been imposed, is an error patent warranting remand for written notification. See State v. Williams, 09-48 (La.App. 5 Cir. 10/27/09); 28 So.3d 357, 368-69, writ denied, 09-2565 (La.5/7/10); 34 So.3d 860. Therefore, we remand this matter to the trial court for the purpose of providing Defendant with appropriate written notice of his sex offender registration and notification requirements, using the form contained in La. R.S. 15:543.1. See State v. Duong, 13-763 (La.App. 5 Cir. 8/8/14); 148 So.3d 623, 647, writ denied, 14-1883, 168 So.3d 395 (La.4/17/15).
*1239 Second, Defendant’s sentence for sexual battery is illegally excessive. Defendant received a 25-year sentence at hard labor for his sexual battery conviction. The record reflects that this offense occurred on or between October 27, 2005 and April 21, 2006. At that time, La. R.S. 14:43.1(C) provided that: “[wjhoever commits the crime of sexual battery shall be punished by imprisonment, with or without hard labor, without benefit of parole, probation, or suspension of sentence, for not more than ten years.”[3]
The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer, and a defendant must be sentenced according to the provisions in effect at the time of the commission of the offense. State v. Sugasti, 01-3407 (La.6/21/02); 820 So.2d 518. The imposition of a harsher sentence than that prescribed at the time the offense was committed constitutes a violation of the ex post facto clauses of both the State and Federal constitutions. State v. Moore, 37,036 (La.App. 2 Cir. 05/14/03); 847 So.2d 97, 99 (per curiam). Accordingly, we vacate Defendant’s sentence on count Dntwo, sexual battery, and remand the matter for resen-tencing in accordance with the provisions in effect at the time of the commission of the offense.
Finally, although the commitment reflects that Defendant was properly advised of the prescriptive period for post-conviction relief pursuant to La. C.Cr.P. art. 930.8, the transcript does not so reflect. The transcript prevails where there is an inconsistency between the minute entry and the transcript. State v. Lynch, 441 So.2d 732, 734 (La.1983). Thus, we correct such error by informing Defendant by way of this opinion that no application for post-conviction relief, including an application for an out-of-time appeal, shall be considered if it is filed more than two years after his convictions and sentences have become final under the provisions of La. C.Cr.P. art. 914 or 922. State v. Morton, 12-27 (La.App. 5 Cir. 5/31/12); 97 So.3d 1034, 1045-46, writ denied, 12-1476 (La.1/18/13); 107 So.3d 625.

DECREE

For these reasons, Defendant’s convictions for aggravated rape and sexual battery are affirmed and his sentence for aggravated rape is affirmed. We vacate his illegal 25-year sentence for sexual battery and remand the matter for resentenc-ing. Further, we instruct the trial court on remand to provide Defendant with written notification of the sexual offender registration and notification requirements.

CONVICTIONS AFFIRMED: SENTENCE ON COUNT TWO VACATED: REMANDED.

. The victim's initials are used under the authority of La. R.S. 46:1844(W)(3), which allows this Court to identify a crime victim who is a minor or a victim of a sex offense by using his or her initials.

. Daubert v. Merell-Dow Pharmaceuticals, Inc.. 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

. La. R.S. 14:43.1 was subsequently amended by Acts 2006, No. 103, to increase the sentencing exposure to not less than twenty-five years nor more than life imprisonment. The amendment became effective August 15, 2006, months after the commission of the present offense.